IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **LARRY DUFFIE, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:13-cv-0032-O** |
| | § | |
| **WICHITA COUNTY, et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: Allison R. Smith's Motion to Dismiss pursuant to Rule 12(b)(6), filed August 26, 2013 (ECF No. 53); Correctional Healthcare Management, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(6), filed August 26, 2013 (ECF No. 57); Defendant Wichita County's Motion to Dismiss, filed August 30, 2013 (ECF No. 62); and Rule 12(b)(6) Motion to Dismiss of Duke, Callahan, Meador, Johns and Whipple, filed August 30, 2013 (ECF No. 63). Having considered the motions, responses, reply,[1] pleadings and applicable law, the Court: denies in part and grants in part Allison R. Smith's Motion to Dismiss pursuant to Rule 12(b)(6); denies Correctional Healthcare Management, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(6); grants Defendant Wichita County's Motion to Dismiss; and grants Rule 12(b)(6) Motion to Dismiss of Duke, Callahan, Meador, Johns and Whipple.

---

[1]Although the County and Officer Defendants filed separate motions to dismiss (*see* ECF Nos. 62 and 63), they filed a joint brief in support of their respective motions (ECF No. 64), as well as a joint reply (ECF No. 76). Defendants Allison Smith and Correctional Healthcare Management, Inc. did not file reply briefs.

1

## I.    Factual Background and Procedural History

The following facts are drawn from Plaintiffs' Corrected Second Amended Complaint, which is the live pleading. *See* ECF No. 51, Sec. Am. Compl.

### A.    The Parties

Plaintiffs Larry Duffie ("Duffie"), Alice Stoddard ("Stoddard"), Sheryl Ware ("Ware") and Tessa Martinez ("Martinez") (collectively, "Plaintiffs") are four Licensed Vocational Nurses ("LVN"s) who filed this lawsuit on March 28, 2013 against their former employer, Defendant Correctional Healthcare Management, Inc., a contractor for inmate medical care for Wichita County Jail ("CHM"), and Defendant Allison Smith, R.N. ("Smith"), individually and in her official capacity as Wichita County Jail's Health Services Administrator.  Plaintiffs allege they were disciplined and ultimately terminated from their employment with CHM in retaliation for reporting Smith's unethical and unlawful acts to the Texas Board of Nursing ("BON").  Plaintiffs also sue Wichita County, a governmental entity in the State of Texas which owns and operates the Wichita County Jail, as well as Wichita County Sheriff David Duke ("Duke"), and employees of the Wichita County Sheriff's Office, Kevin Callahan ("Callahan"), Derek Meador ("Meador"), Donny Johns ("Johns"), and Mark Whipple ("Whipple") (sometimes collectively, the "County Defendants").[2]  Plaintiffs allege that Defendants violated Plaintiffs' constitutional rights to free speech under the First Amendment and to due process under the Fourteenth Amendment, and violated the anti-retaliation provisions of the

---

[2]The Court also refers to Defendants Duke, Callahan, Meador, Johns, and Whipple, in their individual capacities, as the "Officer Defendants."

Nurse Practice Act, Tex. Occ. Code § 301, *et seq.*[3]  Plaintiffs Martinez and Ware also bring suit against Defendants for malicious prosecution and abuse of process.

### B.    Facts[4]

In November 2009, the Wichita County Commissioner's Court voted to contract with CHM to administer inmate health care at the Wichita County Jail beginning January 1, 2010.  Sec. Am. Compl. ¶¶ 18-19.  Nurses who were employed by Wichita County to provide nursing care for jail inmates prior to January 1, 2010 automatically became CHM employees as of that date.  *Id.* ¶ 21.  Defendant Smith began working for CHM as a LVN in or around February 2010, and was licensed to practice professional nursing in the State of Texas on October 7, 2010.  *Id.* ¶¶ 25-26.  At that time, the position of CHM's Health Services Administrator was open and Smith went before a three-member panel comprised of a CHM representative and Officer Defendants Johns and Meador, who, with Duke's approval, appointed Smith to the position, though she was less qualified than other applicants.  *Id.* ¶¶ 28-29.  Pursuant to the CHM contract and Texas law, Defendant Duke retained "final approval" of CHM's health care staff, employees, agents, and/or subcontractors in regards to security and background clearances.  *Id.* ¶ 20.

In the weeks that followed her appointment, Smith gained personal favor with Officer Defendants Johns, Meador and Callahan by fraternizing with them on a regular basis.  *Id.* ¶ 30.  As

---

[3]Although Plaintiffs originally asserted a cause of action for conspiracy to commit civil rights violations under 42 U.S.C. § 1985 (*see* ECF No. 1, Orig. Compl. ¶¶ 147-148), Plaintiffs appear to have abandoned that claim in their live pleading.  To the extent Plaintiffs are seeking to still assert a § 1985 claim in the live pleading by citing the statute in their jurisdiction and venue allegations, *see* ECF No. 51, Sec. Am. Compl. ¶¶ 14, 16, the Court dismisses this claim under Fed. R. Civ. P. 12(b)(6).

[4]In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

Health Services Administrator, Smith possessed and exercised direct supervisory authority over all nurses employed by CHM, including Plaintiffs. *Id.*

On February 4, 2010, Plaintiff Stoddard assessed an inmate who had a festered spider bite in her groin area. *Id.* ¶¶ 33-34. Stoddard and Nurse Colunga determined the inmate needed medical treatment by a physician and to be transferred to a hospital. *Id.* ¶ 35. Before calling a transport officer, they called in the charge nurse, Smith, who instead of sending the inmate to the hospital, performed an unlawful surgical procedure on the inmate without the inmate's informed consent and against her will. *Id.* ¶¶ 33-36, 40-41. Specifically, without leaving the nurse's station or consulting with a physician, Smith administered numerous painful injections of Lidocaine and Epinephrine, and lanced the infected area with a scalpel, while the inmate screamed and had to be held down by others. *See id.* Stoddard refused to participate, left the nurse's station, and sent a text message reporting Smith's conduct to Plaintiff Martinez. *Id.* ¶¶ 43-44, 52. Martinez conferred with Plaintiff Duffie, and they agreed that if Stoddard's information were true, they had an obligation to investigate further and to report the incident to the BON pursuant to the Texas Nurse Practicing Act. *Id.* ¶ 53.

A few days later, Duffie pulled the inmate's file to determine if it contained any documentation authorizing Smith's surgical procedure on the inmate, but found none. *Id.* ¶ 56. The lack of documentation, itself a violation of the Nurse Practicing Act, confirmed Duffie's belief that Smith had violated the law. *Id.* ¶¶ 56, 57. Duffie made an anonymous confidential complaint to the BON as required by law. *Id.* ¶ 58. Duffie also contacted Martinez and told her about the lack of documentation in the file. *Id.* ¶ 60. Martinez, fearing that Smith would try to tamper with the file once she learned that her conduct had been reported to the BON, contacted Plaintiff Ware and asked Ware to copy the entire medical file to protect its integrity and deliver a copy to Martinez. *Id.* ¶¶ 60-

4

61, 71.  On February 8, 2011, Ware made an exact copy of the inmate's file and delivered it to Martinez at a restaurant.  *Id.* ¶ 61.

On February 22, 2011, Martinez and Ware made a confidential complaint to the BON, complaining about matters of public concern, including that Smith's conduct was inconsistent with public health and welfare.  *Id.* ¶ 62.  Each Plaintiff provided a sworn affidavit to the BON in support of the complaint.   *Id.*   As LVNs, Plaintiffs had a duty, ethically and legally, to report to the appropriate licensing board a licensed health care practitioner that they had reasonable cause to believe had exposed a patient to a substantial risk of harm.  *Id.* ¶ 63.  The BON has law enforcement authority and is exempt from the Health Insurance Portability and Accountability Act ("HIPAA"), meaning that protected health information can be legally provided to the BON without patient consent.  *Id.* ¶ 64.

On March 26, 2011, Smith learned about the confidential complaint filed against her and suspected Ware and Martinez were involved.  *Id.* ¶¶ 65-66, 69, 107.  Smith then ordered Nurse Colunga to copy the inmate's chart and deliver it to her.  *Id.*  Smith already knew there were no records in the chart reflecting the unlawful surgical procedure because Smith intentionally did not chart the procedure, or she intentionally removed any incriminating documents very soon after they were made.  *Id.*

On March 30, 2011, taking advantage of the close relationship she had built with certain Officer Defendants, Smith met with Officer Defendants Johns, Meador and Callahan and told them that complaints to the BON had been filed against her, and she falsely alleged there were records missing from the inmate's chart that would exonerate her, asked for their help in identifying who had reported her, and told them she suspected Ware and Martinez.  *Id.* ¶¶ 69-70.  Johns, Meador and

Callahan instructed Defendant Whipple to interrogate Martinez and Ware regarding the alleged missing documents and to determine who had reported Smith's conduct to the BON. *Id.* ¶ 70. Martinez and Ware admitted to Whipple that, in order to preserve the integrity of the file and make it available to BON investigators, Ware copied the inmate's file four days after Smith's unlawful surgical procedure, and gave copies to Martinez, but denied removing records from the chart. *Id.* ¶¶ 71, 75. The focus of Whipple's investigation was not Smith's unauthorized conduct, but to discredit Martinez and Ware in an effort to cover-up Smith's misconduct. *Id.* ¶ 73. During Whipple's interrogation of Martinez, she admitted she had a copy of the inmate's file in her home with the intent to produce it to the BON. *Id.* ¶ 75. Whipple accompanied Martinez to her home and seized the file copies. *Id.* ¶ 76.

Thereafter, Smith, individually and on behalf of CHM, and in concert with the Officer Defendants, conspired to withdraw Martinez's and Ware's security clearances with malicious intent, and falsely accused Martinez and Ware of the offense of "Tampering with Government Records," thereby effectively terminating their employment with CHM in retaliation for their making a good faith report on Smith's misconduct to the BON without going through CHM or Johns, Meador, Callahan, or Duke first. *Id.* ¶¶ 77-78, 82. Smith, individually and on behalf of CHM, and in concert with the Officer Defendants, with Duke's knowledge and approval, conspired to falsely charge Martinez and Ware with a criminal offense, accusing them of tampering with government records, and ordered Whipple to draft a probable cause complaint against Ware and Martinez when no such offense occurred, and the warrant affidavit lacked probable cause that any criminal offense had been committed by Ware or Martinez. *Id.* ¶ 78.

On March 30, 2011, less than 60 days after making a complaint to the BON, Martinez and Ware lost their security clearances by order of Defendant Duke, without due process, and were effectively terminated. *Id.* ¶ 79. Thereafter, Smith called Francisco Hernandez, her predecessor as Health Services Administrator, and boasted that she "[g]ot those bitches [Martinez and Ware] fired, and they are probably going to prison," referring to their terminations, and confirming Smith's participation in the conspiracy to terminate their employment and subsequent prosecution for crimes without probable cause. *Id.* ¶ 80. Ware and Martinez were arrested, booked into jail, and ultimately "no billed" by a Wichita County Grand Jury on June 28, 2011. *Id.* ¶¶ 83, 85.

On September 16, 2011, at the urging of Smith and in concert with Sheriff's officials, the Wichita County District Attorney filed a criminal information against Ware and Martinez for alleged violations of the "Medical Practice Act," claiming they "unlawfully, or knowingly disclosed a record of the identity, diagnosis, evaluation, or treatment of a patient by a physician." *Id.* ¶ 91. Filing of these bogus charges was in retaliation for the report and cooperation with the BON's investigation of Smith's unlawful conduct. *Id.* ¶ 92. Smith, CHM, the Officer Defendants and the District Attorney knew or should have known that these charges were false, malicious, and without merit because there was no record disclosure, and Ware and Martinez as LVNs were exempt from the Medical Practice Act. *Id.* ¶ 92.

On March 21, 2012, a two-day bench trial was held and Ware was found "not guilty" of the criminal charges against her. *Id.* ¶¶ 95, 97. The District Attorney thereafter dismissed the criminal charges against Martinez. *Id.* ¶ 98.

On April 1, 2011, Whipple interrogated Stoddard and ordered her to write a witness statement concerning the situation. *Id.* ¶ 99. When Whipple was not satisfied with Stoddard's

account, Whipple tried to get Stoddard to change her story to conform to Smith's fabrication of the facts. To intimidate her, he took handcuffs out and placed them on the table in front of her, telling her that two nurses had already been fired and were looking at serving "five years" of prison time, but Stoddard did not change her account  *Id.* ¶ 100.  On April 4, 2011, less than 60 days after Stoddard filed a report with the BON about Smith's conduct, she met with Johns and Smith in John's office and was told her employment was terminated for violating HIPAA when she reported Smith's actions to Martinez.  *Id.* ¶ 101.

During Whipple's interrogations of Ware, Martinez and Stoddard, Duffie was identified as one of the nurses who first reported Smith's conduct to the BON.  *Id.* ¶ 107.  Less than 60 days after filing the complaint with the BON, Duffie was transferred to the "grave-yard" shift at the downtown facility by Smith, who told Duffie he was being  transferred because "certain things" had come to her attention and she no longer believed Duffie "had her back."  *Id.* ¶ 107.  A few weeks later, Smith terminated Duffie's employment.  *Id.*

The BON, following a full investigation, found that Smith "failed to document in the medical record" of an inmate, "or follow the physician's orders when she lanced and packed an abscess in the patient's groin [. . . ] [and thereby] exposed the inmate unnecessarily to risk of harm [. . .] put[ting] the inmate at risk of infection and depriv[ing] the inmate's physician the opportunity to institute appropriate medical interventions to stabilize the patient's condition."  *Id.* p. 35 n.16 (quoting Finding of Facts, *In the Matter of Registered Nurse License Number 792516*, Before the Texas Board of Nursing, Nov. 27, 2012).

Plaintiffs contend that the disciplinary actions taken against them, and ultimately their employment terminations, violated the anti-retaliation provisions of the Nurse Practices Act, Tex.

8

Occ. Code § 301, *et seq.*, as well as their First Amendment right to free speech and their Fourteenth Amendment right to due process. Plaintiffs Ware and Martinez also bring claims for malicious prosecution and abuse of process.   Defendants have moved to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   The Officer Defendants also seek dismissal of Plaintiffs' § 1983 claims based on qualified immunity. Having been fully briefed, the motions are ripe for adjudication.

## II.    Legal Standard

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).   The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.   When there are well-pleaded factual allegations, the Court

9

assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* However, the Court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

In ruling on a motion to dismiss under Rule 12(b)(6), the Court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Likewise, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.*

## III.   County and Officer Defendants' Motions to Dismiss

The County and Officer Defendants have moved to dismiss Plaintiffs' § 1983 claims and state law claims. The Court first considers the County's and Officer Defendant's respective arguments supporting their motions to dismiss Plaintiffs' § 1983 claims.

### A.   Plaintiffs' § 1983 Claims

Plaintiffs sue the County and Officer Defendants under 42 U.S.C. § 1983 alleging violations of their constitutional rights under the First and Fourteenth Amendments.[5] Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512

---

[5]To the extent that Plaintiffs are suing the Officer Defendants in their official capacities, an official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, Plaintiffs' allegations against the officers in their official capacities are claims against Wichita County. *See id.*

U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### 1.    County Defendants

The County Defendants move to dismiss Plaintiffs' § 1983 claims arguing that Plaintiffs have failed to state a constitutional deprivation under the First or Fourteenth Amendment, have failed to adequately allege a custom or policy that resulted in a deprivation of their constitutional rights, and are impermissibly seeking to hold the County vicariously liable for its officers' actions. For the reasons stated below, the Court concludes that the County Defendants' motion to dismiss Plaintiffs' § 1983 claims should be granted, as Plaintiffs have failed to adequately allege that the County's actions, through its duly enacted policies or customs promulgated by its policymakers, were the motivating force behind any alleged constitutional violations.[6]

Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of respondeat superior. 42 U.S.C. § 1983*; see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, a municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-91 (1978). "Official policy" is defined as:

---

[6]The Court's finding that Plaintiffs have failed to allege a custom or policy that resulted in a constitutional deprivation obviates the need to address the County's argument that dismissal is also required for Plaintiffs' failure to assert an underlying cognizable constitutional claim.

1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [county's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.      A persistent, widespread practice of [county] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [county] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [county] or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a [county] do not render the [county] liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).  A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific provision.  *See Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984).  A plaintiff must establish that a governmental entity through its deliberate conduct was "the moving force behind the injury alleged," and must establish a direct causal link between the governmental action and the deprivation of a federally protected right.  *See Bryan Cnty.*, 520 U.S. at 404.  Liability must rest on official policy, not the policy of an individual officer.  *Bennett*, 728 F.2d at 769.  When the wrongdoer is a policymaking official, a single act will suffice, if deliberate indifference and causation are established.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  "When the challenged conduct relates to a custom or behavior among non-policymaking employees, which may be contrary to official policy, a plaintiff cannot rely on a single instance of unconstitutional conduct, but must demonstrate at least a pattern of similar incidents in which citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983."  *Duvall v. Dallas County*, 2008 WL 4561563, at *8 (N.D. Tex. Oct. 10, 2008) (Lindsay, J.) (internal quotations and

citation omitted); *see also Bennett,* 728 F.2d at 768 n.3 ("Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability.").  For a facially constitutional policy, the plaintiff must demonstrate that the policy was promulgated with deliberate indifference to known or obvious unconstitutional consequences.  *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001); *accord Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849-50 (5th Cir. 2009) (discussing failure to train or supervise officers).

Plaintiffs summarize their allegations relating to First Amendment violations in response to the County Defendants' motion to dismiss, as follows:

> In the case at bar, Plaintiffs allege that Defendant Wichita County had a policy which prohibited any person making a report to an outside agency relating to any misconduct or adverse activity in the County Jail without the report first being presented to the Sheriff's officials, CHM, or Defendant Wichita County.  Such policy specifically prohibited Plaintiffs from fulfilling their statutory duties as registered nurses under the Texas Occupations Code in regards to making complaints against Wichita County's Health Services Administrator, Defendant Smith without first revealing those complaints to Defendant Wichita County or to Sheriff's officials and therefore violated their right to free speech under the First Amendment.

ECF No. 71, Pl. Resp. to County Def. Mot. to Dis. at 23-24 (internal citation omitted) (citing Sec. Am. Compl. ¶¶ 77, 94, 103, 107, 110, 124, 129).

In support of their motion to dismiss, the County Defendants argue: "Plaintiffs fail to allege plausible facts detailing when this policy was enacted, or by whom, how it was disseminated, or specific instances when the policy was used in any circumstance except this case. Simply put, Plaintiffs' allegations of a policy, practice or custom are conclusory."  ECF No. 64, Def. Brief in Supp. of Mot. to Dis. at 16.  In reply to Plaintiffs' response, wherein Plaintiffs reference paragraphs 77, 94, 103, 107, 110 and 113 of the Second Amended Complaint as sufficient allegations of County

13

liability, the County argues that these allegations "do not reference the enactment of a County policy by its appropriate policymaking body or the existence of a pattern or practice of continuous conduct known to the County's policymaking body." ECF No. 76, Def. Reply at 13-14.

Having carefully considered the 43-page Second Amended Complaint, the parties' legal briefs, and governing law, and assuming, *arguendo*, that Plaintiffs have alleged an underlying constitutional violation, the Court finds that Plaintiffs have failed to adequately allege that the County had a custom or policy that resulted in a deprivation of Plaintiffs' constitutional rights under the First or Fourteenth Amendments. First, it is not entirely clear from the face of the pleadings whether Plaintiffs are complaining of a policy or statement that was officially adopted and promulgated by the County, or of a persistent widespread practice or custom that fairly represents County policy. The Complaint alleges in a conclusory manner that the investigation, prosecution and termination of Plaintiffs were "to announce a county policy to all employees . . . that discussing or reporting bad or even criminal conduct . . . will be met with severe consequences[."] Sec. Am. Compl. ¶ 124. The Complaint also alleges that "Wichita County [is] liable under § 1983 because [it] officially promulgated the decision to inflict the aforementioned adverse employment actions [and] Wichita County had a policy to prohibit employees, vendors, agents, or contractors from any adverse report to any other State or Federal agency without first getting approval of . . . Wichita County." *Id.* ¶ 129.

In essence, Plaintiffs' allegations are about this one incident involving Smith, that they allege resulted in their discipline and, ultimately, their termination, from which they ask the Court to infer customary practices or a policy of creating a chilling effect on anyone who might seek to complain to an agency relating to misconduct at the jail. As the County Defendants correctly argue, a single

incident does not show a policy or custom. *See Bennett,* 728 F.2d at 768 n.3.[7]  In short, Plaintiffs have failed to adequately allege that the County's action, through its duly enacted policies or customs promulgated by its policymakers, was the motivating force behind any alleged First Amendment violation.

With regard to Plaintiffs' claims against the County Defendants for violation of any protected Fourteenth Amendment liberty interest in ongoing employment, the Court agrees with Wichita County that Plaintiffs "did not allege facts demonstrating responsibility or culpability upon the County by asserting a policy or custom as required for governmental liability."  *See* ECF No. 76, Def. Reply at 17.  Allegations regarding withdrawal of security clearances in retaliation for outside reporting, and false accusations resulting in termination of Martinez and Ware, do not give rise to County liability.  Nowhere in the Second Amended Complaint does the Court find allegations that the County, through a policymaker, enacted or formulated a policy that required its employees to act against employees who reported to outside agencies, to withdraw security clearances, or to disallow further access to jail facilities.  In short, Plaintiffs have failed to adequately allege that the County's

---

[7]The Court is not certain on the face of the pleadings whether Plaintiffs attempt to recover against the County Defendants based on allegations that Sheriff Duke was a policymaker in the area of law enforcement with responsibilities that included "keeper of the jail."  As the County Defendants correctly note, "The general references to the Sheriff's authority and responsibility to inmates does not transform what are allegations of individual or supervisory conduct to allegations sufficient to constitute County action."  *See* ECF No. 76, Def. Reply at 15.  Further, as the Court has already noted, pleadings pertaining to individual actions taken in this specific case do not suffice to establish a pattern necessary for governmental liability based on custom or practice.  *See Bennett,* 728 F.2d at 768 n.3.  It is also not clear from the pleadings whether Plaintiffs seek to hold Sheriff Duke liable under a theory of supervisory liability.  In any event, the Court finds the allegations against Duke are too general and conclusory to serve notice to Defendants under Rule 8(a) as to the basis of Plaintiffs' recovery against Duke.  *See generally Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("A supervisor is liable under § 1983 if he implements a policy so deficient that the policy itself is a repudiation of constitutional standards" and is "the moving force of the constitutional violation.").

actions, through its duly enacted policies or customs promulgated by its policymakers, was the motivating force behind any alleged Fourteenth Amendment violation.

Following *Twombly* and *Iqbal*, Plaintiffs have the burden to allege facts that show entitlement to relief. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009). Well-pled facts that merely permit an inference of possible misconduct do not show entitlement to relief as required by Rule 8(a)(2). *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (relying on *Iqbal*). Without enough facts to permit the inference of an official custom or policy that resulted in Plaintiffs' alleged injuries, their claims against Wichita County (and the Officer Defendants in their official capacities) necessarily fail. *See McClure v. Biesenbach*, 355 F. App'x 800, 803-04 (5th Cir. 2009) (finding that Plaintiffs must plead facts showing that a policy or custom existed to state a claim, and affirming dismissal of municipal liability claims because the complaint alleged insufficient facts).

For the foregoing reasons, the Court grants the County Defendants' motion to dismiss Plaintiffs' § 1983 claims.

### 2.    Officer Defendants

The Officer Defendants argue they are entitled to qualified immunity and therefore the Court should dismiss Plaintiffs' § 1983 claims against them.

The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Qualified immunity balances two important interests - the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.* This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Courts generally apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), in determining whether a government official is entitled to qualified immunity for an alleged constitutional violation. The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Saucier*, 533 U.S. at 201. If the record sets out or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes the violation of a constitutional or federal statutory right, the Court then asks whether the right was clearly established at the time of the government official's alleged misconduct. *Id.* If there are sufficient allegations or evidence to support the violation of a constitutional right, the court asks whether, nevertheless, qualified immunity is appropriate because defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008). A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, the right must not only be established in an abstract sense, but in a more particularized sense so that it is apparent to the official that his actions are unlawful in light of pre-existing law. *Id.*

The Supreme Court has clarified that it is no longer mandatory for courts to consider the two prongs set out in *Saucier* in order, although the Court noted that it may be beneficial to do so. *Pearson*, 555 U.S. at 236.   Under *Pearson*, courts are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.   *Id.*

a.      *Qualified Immunity Analysis - First Amendment Claim*

The Court turns first to the threshold issue of whether the facts alleged are sufficient to make out a violation of a constitutional right under the First Amendment.   *See generally Saucier*, 533 U.S. at 201.   Plaintiffs allege that Smith and CHM, along with the Officer Defendants, while acting under color of state law, deprived each Plaintiff of their right to free speech, *i.e.*, "reporting matters of public concern as guaranteed by the First Amendment[.]" *See* ECF No. 51, Sec. Am. Compl. ¶ 120. Plaintiffs allege each of them suffered an adverse employment action after reporting Smith's misconduct to the BON, including retaliatory withdrawal of security clearances and resulting terminations, and that Ware and Martinez additionally suffered retaliation in the form of subsequent malicious criminal prosecutions.   *Id.* ¶ 118.

To state a claim under § 1983 for a First Amendment retaliation claim, a public employee must allege: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in efficiency; and (4) her speech motivated the employer's adverse action. *Modica v. Taylor*, 465 F.3d 174, 179-80 (5th Cir. 2006) (citation omitted).

The Officer Defendants' sole argument is that Plaintiffs have failed to state a claim since "statements of public employees made pursuant to official duties are not statements as citizens that

18

are protected by the First Amendment." *See* ECF No. 76, Def. Reply at 10.  At this early juncture in the case, based on the pleadings alone, the Court rejects this argument.  *See generally Garcetti v. Cebalos*, 547 U.S. 410, 417 (2006) (recognizing that under controlling precedent, "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.")*; see also Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 691 (5th Cir. 2007) (same).  In *Garcetti*, the Supreme Court found that statements in an assistant district attorney's internal memorandum indicating questionable law enforcement practices were made pursuant to the attorney's official duties, and therefore did not have protected status under the First Amendment.  *Garcetti*, 547 U.S. at 421-23.  The Court concluded that the "controlling factor" in determining whether a public employee's speech is protected is whether those expressions were made pursuant to the employee's official duties:

> We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.
>
> * * *
>
> Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself commissioned or created . . .

*Id.* at 421; *see also Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968) ("A public employee's speech is protected by the First Amendment when the interests of the worker as a citizen concerning matters of public concern outweigh the interests of the state as an employer, in promoting the efficiency of the services it performs through its employees.")

At this early juncture in the case, the Court rejects the Officer Defendants' conclusory argument that Plaintiffs' confidential reports and complaints to the BON about Smith's misconduct emanated from their official duties as nurses who are mandated by statute to report misconduct by other nurses, thereby rendering their speech unprotected.  *See* ECF No. 64, Def. Brief in Supp. of Mot. to Dis. at 13-14 (citing *Garcetti*, *supra*); ECF No. 76, Def. Reply at 13 ("Because Plaintiffs' First Amendment claims arise from speech in their official duties as nurses, no constitutional protection is afforded to them and no constitutional violation has been alleged against the County Defendants").  Further, while information contained in the complaints to the BON was certainly learned while Plaintiffs were employed by CHM and working at the Wichita County Jail, "[t]o hold that any employee's speech is not protected merely because it concerns facts that he happened to learn while at work would severely undercut First Amendment rights." *McKay v. Dallas Indep. Sch. Dist.*, 2009 WL 530581, at *5 (N.D. Tex. March 3, 2009) (O'Connor, J.) (citing *Charles v. Grief*, 522 F.3d 508, 512 (5th Cir. 2008)).

The Court finds persuasive a 2006 district court decision from Colorado concerning First Amendment claims made by a nurse who alleged she was terminated from her employment in retaliation for voicing her concerns over various issues affecting the hospital, including reporting improprieties and drafting incident reports.  *See Rohrbough v. Univ. of Colo. Hosp. Auth.*, 2006 WL 3262854, at *3 (D. Colo. Nov. 9, 2006).   In denying the motion to dismiss premised on similar arguments to those made by the Officer Defendants in this case, the district court stated:

> I further reject defendants' attempt to transmogrify the Colorado Nurse Practices Act . . . into a font of potentially speech-limiting official duties for nurses in this state. Absent more concrete, particularized proof that plaintiff was specifically compensated as part of her official duties for complying with the Act, nothing in

> *Garcetti* suggests that the statute by itself expands the scope of an employer's right
> to limit employee speech.

*Id.*; *see also Garcetti* 547 U.S. at 424-25 (cautioning that when the employee's official duties are not

so clearly delineated, and where "there is room for serious debate," the determination whether speech

is protected involves a "practical" determination, and cannot be based on "formal job descriptions"

which "often bear little resemblance to the duties an employee actually is expected to perform[.]").[8]

Having found that there are sufficient allegations to support the violation of a constitutional

right, the Court turns to the second inquiry in its qualified immunity analysis and asks whether,

nevertheless, qualified immunity is appropriate because the Officer Defendants' actions were

objectively reasonable "in light of clearly established law at the time of the conduct in question."

*See Hampton Co. Nat'l Sur.,* 543 F.3d at 225.

The Officer Defendants argue Plaintiffs have not alleged any conduct by Defendants that is

objectively unreasonable under clearly established law.  The Court turns to whether the contours of

Plaintiffs' First Amendment free speech claim were clearly established at the time of the alleged

unlawful actions.

As already stated, qualified immunity is a defense available to public officials performing

discretionary functions ". . . insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person should have known.  *Harlow*, 475 U.S. at 818.

The qualified immunity defense fixes an objective standard for an official's behavior. A right is

---

[8]Although the Officer Defendants do not argue otherwise, the Court concludes that Plaintiffs have adequately
alleged that the speech at issue related to a matter of public concern, namely making reports and complaints
to an outside governmental agency, the BON, about misconduct that relates to patient safety and welfare, and
the standard of healthcare services provided at the Wichita County Jail.  *See generally Alexander v. Eads*,
392 F.3d 138, 142 (5th Cir. 2004) (controversies that can be fairly considered as relating to any matter of
political, social or other consequence to the community are matters of public concern).

"clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper.  *See Anderson*, 483 U.S. at 640.

In the realm of First Amendment jurisprudence involving speech by public employees, the Fifth Circuit has noted the case-by-case inquiry employed by courts to determine whether public employees have been discharged in violation of first amendment free speech rights, and its impact on qualified immunity determinations by courts.  *See Noyola v. Tex. Dep't of Hum. Resources*, 846 F.2d 1021, 1025 (5th Cir.1988) ("One consequence of case-by-case balancing is its implication for the qualified immunity of public officials whose actions are alleged to have violated an employee's first amendment rights.  There will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights."); *see also Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir. 1988) (". . . reasonable government officials, knowing only that they must not infringe on [employee free speech rights], would not necessarily know just what conduct was prohibited.").  Plaintiffs' case, and specifically the difficulty in determining whether the speech at issue was protected speech about matters of public concern, or unprotected speech made by public employees pursuant to their official duties (a fact-intensive issue), coupled with the need to balance the plaintiff's interest in commenting on matters of public concern with the employer's interest in maintaining discipline and efficiency in the workplace, demonstrate the level of nuance presented.  Indeed, while this Court has determined that Plaintiffs have sufficiently alleged that their speech was protected, the Court recognizes that discovery regarding Plaintiffs' job duties could alter the Court's analysis at the summary judgment stage, rendering the speech unprotected.  *See generally Rohrbough*, 2006 WL 3262854, at *3.

22

For these concerns unique to the First Amendment free speech realm, and in cases involving speech by public employees, the Court finds that the "contours" of Plaintiffs' rights to report on unlawful conduct by other nurses at the county jail without adverse employment consequences, and the unlawfulness of disciplining or terminating nurses for copying patient records and reporting to outside agencies, were not so clearly outlined as to be "apparent," such that the Officer Defendants should have to forfeit their qualified immunity. *See Anderson*, 483 U.S. at 640; *Noyola*, 846 F.2d at 1024-25 (finding public officials entitled to qualified immunity where "[n]either the protected status of [public employee's] speech not his right to remain employed by [agency] following speech could have been facially apparent to [public officials].").

Finally, the Court finds that even were the free speech rights of Plaintiffs clearly established such that it should have been apparent to the Officer Defendants that their conduct was unlawful, based on the allegations, the Officer Defendants acted in an objectively reasonable fashion, and are therefore entitled to qualified immunity. As the Officer Defendants note, "Plaintiffs allege that Smith falsely reported missing records and that the actions of the County Defendants were based on Smith's reports." *See* ECF No. 64, Def. Brief in Supp. of Mot. to Dis. at 22. Plaintiffs allege that Smith suspected that Ware and Martinez were the ones who reported her improper conduct to the BON, and, knowing that the identities of the authors of the complaint were confidential and privileged under state law and that she purposefully failed to document the surgical procedure in the inmate's chart, Smith deliberately and in bad faith contacted the Officer Defendants under the guise that medical records were missing from the inmate's file, and insisted that the Officer Defendants investigate Ware and Martinez, accusing Ware and Martinez of removing certain documents from the inmate's medical file which Smith knew never existed. *See* ECF No. 51, Sec. Am. Compl. ¶¶

23

77-78, 137, 148-159, 187-188.  Plaintiffs further allege that the Officer Defendants only proceeded forward with the criminal prosecution of Martinez and Ware for the felony offense of "tampering with government records" because of Smith's false claims.  *See id.*  These pleadings are inconsistent with a finding that the Officer Defendants' actions were objectively unreasonable such as would cause the Officer Defendants to forfeit their qualified immunity.

In sum, the Court determines that the Officer Defendants are entitled to qualified immunity with regard to Plaintiffs' §1983 claims based on First Amendment violations, and their motion to dismiss should be granted.

>    b.    *Qualified Immunity Analysis - 14th Amendment Due Process Claim*

Plaintiffs allege that the Officer Defendants (conspiring with the other Defendants) "deprived them of their liberty interest in maintaining their security clearances and continued employment [and] their liberty interest in not being punished for doing what the law clearly allows them to do — report misconduct to the Texas Board of Nursing without being suspended, terminated, or otherwise disciplined — in violation of the Fourteenth Amendment[.]"  ECF No. 51, Sec. Am. Compl. ¶ 120. The Court turns first to the threshold issue of whether the facts alleged are sufficient to make out a violation of a constitutional right under the Fourteenth Amendment.  *See generally Saucier*, 533 U.S. at 201.

The Officer Defendants challenge Plaintiffs' due process claim arguing that "Plaintiffs had not specifically pleaded facts to assert a deprivation of any constitutional rights arising from the Fourteenth Amendment because they have no independent protected liberty or property interest." *See* ECF No. 76, Def. Reply at 16.  In response, Plaintiffs made clear they were seeking to assert a violation of their liberty interest, not their property interest, and relied on the Texas Occupations

24

Code as the source of the liberty interest. In reply, the Officer Defendants argue that: "Plaintiffs do not reference language which provides an entitlement for Plaintiffs. Plaintiffs do not respond with a case establishing a liberty interest that flows from this statutory enactment. This statutory enactment does not establish entitlements for Plaintiffs' asserted liberty interest as Plaintiffs have no constitutional right to have access to a controlled jail facility." *Id.* The Court agrees.

The Due Process Clause provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972). The Court first notes that Plaintiffs are alleging a liberty interest in their ongoing employment, rather than a property interest in their employment, and will analyze the claim as plead.

A public employee has a liberty interest protected by the Fourteenth Amendment if she can demonstrate, in conjunction with her discharge from public employment, her employer made a statement or charge that "might seriously damage her standing and associations in her community" or that "imposed on [her] a stigma or other disability that foreclose[s] her freedom to take advantage of other employment opportunities." *See id.* at 573. From the pleadings, the Court cannot determine or reasonably infer that Plaintiffs have made any of these allegations. Instead, Plaintiffs are alleging a liberty interest arising from the Texas Occupations Code. In response to the Officer Defendants' motion to dismiss, Plaintiffs rely on state law cases referring to good conduct time credits and mandatory supervision, as well as general language from *Bordenkircher v. Hayes*, 434 U.S. 357, 363

25

(1977), where the Supreme Court held there was no course of conduct by a prosecutor that violated due process. *See* ECF No.71, Pl. Resp. to Def. Mot. to Dis. at 26-27. These cases are not even remotely similar to this case, and add nothing to Plaintiffs' due process argument.

In short, the Court finds that Plaintiffs have failed to allege a protected liberty interest under the Due Process Clause. As the pleadings fail to establish a constitutional violation of any protected liberty interest, no further inquiry is necessary. *See generally Saucier*, 533 U.S. at 201.[9] Accordingly, the Officer Defendants are entitled to qualified immunity on Plaintiffs' § 1983 claim arising under the Fourteenth Amendment, and their motion to dismiss should be granted.

## B.   Plaintiffs' State Law Claims

In addition to Plaintiffs' § 1983 claims, Plaintiffs allege that the County and Officer Defendants have violated Texas Occupations Code § 301 *et seq.*, which provides in relevant part: "[A] person may not suspend or terminate the employment of, or otherwise discipline or discriminate against, a person who reports, without malice, under this section." Tex. Occ. Code § 301.402(f). Plaintiffs Ware and Martinez allege that the County and Officer Defendants are liable for malicious prosecution and abuse of process relating to the criminal prosecutions brought against them.

The County and Officer Defendants seek dismissal of Plaintiffs' state law claims "based on two basic concepts involving claims against Texas governmental entities and their employees: (1)

---

[9]The Court's decision is premised solely on Plaintiffs' allegations that they were deprived of a liberty interest. While it is possible that the anti-retaliation provision in the Texas Occupations Code, *see* Tex. Occ. Code §§ 301.413, 301.4025c, would suffice to provide Plaintiffs with a property right in continued employment, Plaintiffs have not alleged a deprivation of a property interest. *See generally Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988) (summarizing the law of property interest in entitlement to continued employment). The Court cannot fashion a procedural due process claim arising from a property right without Plaintiffs having asserted such a right. Moreover, as Plaintiffs have had numerous opportunities to amend the pleadings (including after the Officer Defendants asserted the affirmative defense of qualified immunity), amendment would not be permitted if requested.

the law requires a waiver of sovereign immunity to permit suit against the governmental entity; and (2) an irrevocable election of remedies is made at the time of filing pleadings against the entity or its employees." *See* ECF No. 76, Def. Reply at 1-2; ECF No. 64, Def. Brief in Supp. of Mot. to Dis. at 2 (same).

In their response, Plaintiffs concede that their intentional common law tort claims of malicious prosecution and abuse of process against the County and Officer Defendants fall under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code § 101.106, and should therefore be dismissed. Accordingly, the Court will grant the County and Officer Defendants' motions to dismiss Plaintiffs' malicious prosecution and abuse of process claims.

Plaintiffs argue, however, that "their anti-retaliation claim brought under Section 301 of the Texas Occupation Code does not fall under the TTCA, and there is no election of remedies requirement for this statutory claim." *See* ECF No. 71, Pl. Resp. to Def. Mot. to Dis. at 10. Plaintiffs further argue that the statutory scheme of the Nursing Practices Act in the Texas Occupations Code, Tex. Occ. Code Ann. § 301.001, *et seq.*, including subsequent amendments thereto, evidences Legislative intent to waive immunity, and nurses who are public employees would have no protection unless immunity is waived. *Id.* In their reply brief, the County and Officer Defendants contend that Plaintiffs present "no viable authority that the Texas Legislature has enacted clear and unambiguous language waiving immunity for the time period relevant to Plaintiffs' claim." ECF No. 76, Def. Reply at 5. Defendants are correct.

A Texas governmental unit is immune from suit and tort liability unless the legislature has waived immunity. *Harris County v. Dilliard*, 883 S.W.2d 166, 168 (Tex. 1994). Sovereign immunity shields a government unit, Wichita County, from liability for the torts of its officers or

27

agents in the absence of constitutional or statutory provision creating such liability. *Dallas County Mental Health and Mental Retardation v. Beasley*, 968 S.W.2d 339, 341 (Tex. 1998). The TTCA creates a limited waiver of sovereign immunity, though only under the clearly defined areas enumerated in the Act. Tex. Civ. Prac. & Rem. Code § 101.021. "[Local units of government] perform only governmental functions and are immune from tort suit unless their immunity has been waived by statute.*" Garcia v. Maverick County*, 850 S.W.2d 626, 628 (Tex. App. — San Antonio, 1993, writ denied). Further, under the Code Construction Act: ". . . a statute shall not be construed as a waiver of immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code § 311.034.

The Court finds no clear and unambiguous waiver of immunity in the Texas Occupations Code. Section 301.413 of the Texas Occupations Code provides a statutory cause of action against a person who has retaliated against a nurse for making a good faith report of misconduct to the BON. Neither the Texas Occupations Code, nor any other statute, provides any language declaring a waiver of sovereign immunity. The Court further rejects Plaintiffs' attempt to rely on subsequent amendments to show waiver. Accordingly, finding no statutory waiver of sovereign immunity, the Court grants Wichita County's motion to dismiss Plaintiffs' state statutory claims.

Further, in accordance with TTCA § 101.106, all state law claims against the Officer Defendants Duke, Callahan, Meador, Johns and Whipple are hereby dismissed because Plaintiffs' tort claims arise under the TTCA, and Wichita County perfected its statutory right to dismissal of its employees upon filing its motion to dismiss.

## IV.     Allison Smith, R.N.'s Motion to Dismiss

Smith argues that all Plaintiffs' causes of action against her should be dismissed. Plaintiffs' response contends otherwise. Smith did not file a reply brief. The Court considers each cause of action in turn.

### A.        Plaintiffs' Texas Occupational Code Claim

Smith argues that Plaintiffs' claims for violations of the Texas Occupations Code § 301 should be dismissed because Plaintiffs do not allege that Smith "employed them or terminated their employment with Wichita County or Correctional Healthcare Management, Inc." *See* ECF No. 53, Smith Mot. to Dis. at 2. Smith also argues that she could not have terminated Plaintiffs since they have alleged that "David Duke had sole authority over Plaintiffs' employment status[,]" and thus she cannot be liable for any adverse employment action. *See* ECF No. 54, Smith Mem. in Supp. of Mot. to Dis. at 6. In opposition, Plaintiffs argue that allegations that Smith employed or terminated them are not required to state a claim for a violation of the Texas Occupations Code. *See* ECF No. 66, Pl. Resp. to Smith Mot. to Dis. at 7. The Court agrees.

During the relevant time period, section 301 of the Texas Occupations Code provided: "[A] person may not suspend or terminate the employment of, or *otherwise discipline or discriminate against*, a person who reports, without malice, under this section." Tex. Occ. Code § 301.402(f) (emphasis added). Thus, wrongful termination is not a necessary element for Plaintiffs to assert a claim under section 301. Plaintiffs have alleged that in addition to their terminations, Smith, aided and abetted by other Defendants, also retaliated against Plaintiffs Stoddard, Martinez and Ware by instituting a bogus criminal complaint, subjecting them to unwarranted and harassing interrogations by Whipple and subsequent arrest and criminal prosecutions of Ware and Martinez. Plaintiffs allege all of these retaliatory acts were a result of Smith's false claim that there were records missing from

the medical chart of the jail inmate in question that would exonerate her actions. *See generally* ECF No. 51, Sec. Am. Compl. ¶¶ 11, 12, 66-84, 91-92, 99-103.  Plaintiff Duffie alleges that in addition to, and prior to his termination, Smith subjected him to harassing and unwarranted discipline by transferring him to the graveyard shift at the main jail so she could keep watch over him. *Id.* ¶¶ 107-110.  Plaintiffs also allege Smith was aware that CHM, in its contract with Wichita County, had a written policy requiring termination if security clearances were revoked, and her actions were purposefully directed at bringing about Plaintiffs' employment terminations by convincing Officer Defendants to withdraw Plaintiffs' security clearances.

Based on these detailed allegations, the Court concludes that Plaintiffs have properly alleged a plausible claim for relief for violations of § 301 of the Occupations Code by Smith, and therefore denies Smith's motion to dismiss this cause of action.

### B.    Martinez's and Ware's Malicious Prosecution Claims

Smith contends that Martinez's and Ware's malicious prosecution claims should be dismissed since they fail to allege one of the necessary elements of the cause of action, namely "facts to show Smith was the cause-in-fact of any prosecution of Plaintiffs." *See* ECF No. 53, Smith Mot. to Dis. at 2.  In opposition, Martinez and Ware argue they have satisfied this element. *See* ECF No. 66, Pl. Resp. to Smith Mot. to Dis. at 12-13.  The Court agrees with Plaintiffs.

To successfully assert a claim for malicious prosecution, a plaintiff must show that: (1) a criminal prosecution was commenced against her; (2) the defendant initiated or procured that prosecution; (3) the prosecution terminated in her favor; (4) she was innocent of the charges; (5) the defendant lacked probable cause to initiate the prosecution; (6) the defendant acted with malice; and (7) she suffered damages. *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

30

A defendant "procures" a criminal prosecution if her actions were enough to cause the prosecution and if the prosecution would not have occurred but for her actions. *See Browning-Farris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994). Generally, "a person cannot procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person, a law enforcement official or the grand jury." *Id.* However, "[a]n exception . . . occurs when a person provides information which he knows is false to another to cause a criminal prosecution." *Id.* (citation omitted).

Plaintiffs allege that Smith suspected that Ware and Martinez were the ones who reported her improper conduct to the BON, and, knowing that the identities of the authors of the complaint were confidential and privileged under state law and that she purposefully failed to document the surgical procedure in the inmate's chart, Smith deliberately and in bad faith contacted the Officer Defendants under the guise that medical records were missing from the inmate's file, and insisted that the Officer Defendants investigate Ware and Martinez, accusing Ware and Martinez of removing certain documents from the inmate's medical file which Smith knew never existed. *See* ECF No. 51, Sec. Am. Compl. ¶¶ 77-78, 137, 148-159, 187-188. Plaintiffs further allege that the Officer Defendants only proceeded forward with the criminal prosecution of Martinez and Ware for the felony offense of "tampering with government records" because of Smith's false claims. *See id.*

From these allegations, the Court concludes that Plaintiffs have adequately alleged the second element of their cause of action for malicious prosecution, which Smith argued was lacking, namely, that Smith's conduct was the "determining factor" in Martinez's and Ware's criminal prosecutions, and the information she furnished the Officer Defendants was known by her to be false. *See Browning-Farris Indus., Inc.*, 881 S.W.2d at 294 ("In order to charge a private person with

responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.").  Accordingly, the Court denies Smith's motion to dismiss Martinez's and Ware's malicious prosecution claims.

## C.     Martinez's and Ware's Abuse of Process Claim

Smith argues that Martinez's and Ware's abuse of process claim should be dismissed since: "(a) the validity of an arrest warrant cannot serve as the basis for an abuse of process claim; and (b) there is no factual allegation to show that Smith improperly used the process."  *See* ECF No. 53, Smith Mot. to Dis. at 2.

A claim for abuse of process requires: (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act.  *See Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no. pet.).  "The 'critical aspect' of an abuse of process claim is the improper use of process *after it has been issued*."  *Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App.—Austin 2008, pet. denied) (original emphasis) (quoting *Preston Gate, LP*, 248 S.W.3d at 897); *see also Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. Civ. App.—Houston 1965, no writ) (quoting Prosser on Torts, 3rd Ed., Sec. 115) ("Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.")

Martinez and Ware allege that "Smith, individually and as agent for CHM, in concert with Whipple, Johns, Meador, Callahan, and Duke, each had an ulterior motive or purpose in exercising use of the criminal prosecution, i.e., they were protecting their personal relationships with Smith and each had an interest in keeping Plaintiffs from exercising their right to free speech and in thwarting the Texas Board of Nursing's investigation of Smith and CHM's actions." ECF No. 51, Sec. Am. Compl. ¶ 195. Plaintiffs further allege that the "abuse of process in this case – wrongful seizure, interference, and resulting criminal prosecutions . . . resulted in costs to Plaintiffs of their criminal defenses, loss of employment, harm to their reputation, loss of income and benefits, as well as emotional pain and suffering." *Id.* ¶ 196. Plaintiffs also allege that in retaliation for their good faith reporting, "Smith filed complaints about Martinez and Ware with the Texas Board of Nursing informing the [B]oard of Martinez and Ware's arrest knowing the charges against Martinez and Ware were false, meritless, and without probable cause." *Id.* ¶ 84.

The Court agrees with Smith that, "the arrest warrants cannot be the basis for an abuse of process claim." *See* ECF No. 54, Smith Mem. in Supp. of Mot. to Dis. at 10 (and cases cited therein). Further, "that a defendant had an improper motive in securing the process is immaterial if defendant used the process properly." *Id.* Thus, any allegations in the Complaint pertaining to bad motives in obtaining the arrest warrant do not state a claim for abuse of process, but rather for malicious prosecution. *See Preston Gate*, 248 S.W.3d at 897.

Plaintiffs adequately allege, however, that Smith made improper use of process *after* it was issued, namely, that she made her own report to the BON informing the Board about the arrests, knowing the charges against Martinez and Ware were false, meritless, and without probable cause, in an effort to thwart the BON's investigation of Smith's misconduct, initiated by Ware and

33

Martinez's confidential report, and to intimidate and punish Ware and Martinez for participating in legal conduct and exercising their rights to free speech. Based on these allegations, the Court concludes that Martinez and Ware have adequately alleged an abuse of process cause of action against Smith. Accordingly, the Court denies Smith's motion to dismiss the abuse of process claim.

### D.    Plaintiffs' § 1983 Claims

Smith contends that Plaintiffs' 1983 claims should be dismissed since: "(a) Plaintiffs fail to allege facts to show that Smith acted under color of state law; and (b) Plaintiffs plead only conclusory allegations and legal conclusions as to Smith's liability." *See* ECF No. 53, Smith Mot. to Dis. at 1. In response, Plaintiffs contend that they have adequately alleged that Smith was acting under color of state law at all relevant times.

To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). The Court has already found that Plaintiffs have alleged a constitutional violation of their First Amendment free speech rights in connection with the retaliation taken against them in retaliation for making reports of Smith's misconduct to the BON, and thus will not re-address that here. *See supra*, sec. III.A.2.a.

The "under color of state law" element of a § 1983 claim requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). Plaintiffs have sufficiently alleged a contract between CHM (of which Smith was an employee) and Wichita County for provision of Wichita County Jail's health care, sufficient to state a colorable claim that Smith and CHM were acting under color of state

law at the time of their actions.  *See generally West v. Akins*, 487 U.S. 42, 54-57 (1988) (private

physician under contract with State of North Carolina to provide medical services to prison inmates,

but not employed directly by state, nonetheless acts under color of state law when treating inmate);

*see also  Loosier v. Unknown Medical Doctor*, 435 Fed. Appx. 3002, 2010 WL 77114192, at *4 (5th

Cir. 2010) (recognizing that private medical provider acting pursuant to contract with state to provide

medical care to prisoners may be state actor, and remanding to allow injured inmate discovery on

contractual relationship between state and private hospital)  The pleadings state:

> In November 2009, the Wichita County Commissioner's Court voted to contract with
> CHM to administer inmate health care at the Wichita County Jail beginning January
> 1, 2010.  Sec. Am. Compl. ¶¶ 18-19.  Nurses who were employed by Wichita County
> to provide nursing care for jail inmates prior to January 1, 2010 automatically became
> CHM employees as of that date.  *Id.* ¶ 21.  Defendant Smith began working for CHM
> as a LVN in or around February 2010, and was licensed to practice professional
> nursing in the State of Texas on October 7, 2010.  *Id.* ¶¶ 25-26.  At that time, the
> position of CHM's Health Services Administrator was open and Smith went before
> a three-member panel comprised of a CHM representative and Officer Defendants
> Johns and Meador, who, with Duke's approval, appointed Smith to the position,
> though she was less qualified than other applicants.  *Id.* ¶¶ 28-29.

At this early juncture, Plaintiffs have sufficiently pled that Smith was acting under color of state law.

Further, the Court rejects Smith's alternate grounds for dismissal, namely that Plaintiffs plead

only conclusory allegations and legal conclusions as to Smith's liability.  Plaintiffs' allegations of

Smith's unlawful conduct are detailed, including that Smith provided false information to the BON

and to the Officer Defendants in retaliation for Plaintiffs' reporting her misconduct to the BON, and

that her falsehoods served as the determining factor in having Plaintiffs' security clearances revoked

and ultimately in Plaintiffs' termination within 60 days of their complaints to the BON.  *See*

*generally* ECF No. 51, Sec. Am. Compl. ¶¶ 77-78, 84, 137, 148-59, 197-88.

In sum, the Court denies Smith's motion to dismiss Plaintiffs' § 1983 claims for First Amendment violations. Having found no Fourteenth Amendment claim, *see supra*, sec. III.A.2.b, the Court grants Smith's motion to dismiss Plaintiffs' § 1983 claims for Fourteenth Amendment violations.

## V.   Correctional Health Management, Inc.'s Motion to Dismiss

Similar to Smith's arguments in support of dismissal, CHM contends that: (1) Plaintiffs' claims for violations of the Texas Occupations Code § 301 should be dismissed because Plaintiffs do not allege that CHM "terminated their employment or had the authority to terminate their employment[]"; (2) Martinez's and Ware's malicious prosecution claims should be dismissed since they fail to allege that CHM "initiated or procured" any prosecution of Martinez and Ware, and Martinez and Ware have failed to allege facts to support their claim that CHM acted with malice; and (3) Martinez's and Ware's abuse of process claim should be dismissed since: (a) the validity of an arrest warrant cannot serve as the basis for an abuse of process claim; (b) there is no allegation that CHM improperly used the process; and (c) Martinez and Ware do not make any specific allegations of an abuse of process by CHM. *See* ECF No. 57, CHM Mot. to Dis. at 2. CHM does not move to dismiss Plaintiffs' § 1983 claims.

In opposition, Plaintiffs contend that CHM is vicariously liable for Smith's conduct under principals of agency law, and that they have adequately alleged agency in the pleadings. *See* ECF No. 65, Pl. Resp. to CHM Mot. to Dis. at 9 (citing *Ames v. Great Southern Bank*, 672 S.W.2d 447 (Tex. 1984)) ("Smith's actions as Health Services Administrator to terminate Plaintiffs' employment, or otherwise discipline or discriminate against Plaintiffs, binds CHM as though CHM itself had performed these actions even though Smith may have lacked actual authority either express or

implied"). Plaintiffs further argue that, based on their allegations, "[i]t is apparent that CHM was aware of Smith's alleged action against Plaintiffs as they occurred or soon thereafter[,]" creating a duty for CHM to "repudiate or disaffirm Smith's retaliatory actions against Plaintiffs if [the] actions were not authorized by CHM." *Id.* Plaintiffs allege that no such repudiation occurred before this lawsuit was filed or before Ware and Martinez's criminal prosecutions ended. *Id.*

As a general rule, if an act falls within the authority of an agent, then any representations may be imputed to the principal. *See Weyant v. Acceptance Ins. Co.*, 917 F.2d 209, 213–14 (5th Cir.1990) (Texas law). When an individual is entrusted with specific duties, he is the agent of the entrusting company for such purposes. *See Foundation Reserve Ins. Co. v. Wesson*, 447 S.W.2d 436, 439 (Tex. Civ. App. 1969, writ ref'd). The principal is charged both with the acts of an agent committed within the scope of his duties and with knowledge of such acts. *See Bellefonte Underwriters Ins. Co. v. Brown,* 663 S.W.2d 562, 585 (Tex.App.1983), *rev'd other grounds,* 704 S.W.2d 742 (Tex.1986). Moreover, a company is liable for any misconduct by an agent that is within the actual or apparent scope of the agent's authority. *See Celtic Life,* 885 S.W.2d at 98.

Under Texas law, even if Smith did not act in the course and scope of her employment, CHM may nevertheless be held liable under a theory of ratification. Ratification occurs when "the employer or its vice-principal confirms, adopts, or fails to repudiate the acts of its employee." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 653 (5th Cir. 1994). Ratification "means the adoption, confirmation or failure to repudiate prior unlawful acts which were not legally binding at a time when the [defendant] had the right and knowledge of facts necessary to repudiate such conduct; but which, by ratification or failure to repudiate, become the acts of the defendant." *Id.* (citation omitted). Prior to ratification, a principal must have knowledge of the unauthorized acts

of the agent. *Id.* at 654. An employer may ratify the intentional torts of its employees, even if the intentional torts are committed outside the course and scope of the employment. *Id.* at 652.

Plaintiffs have sufficiently alleged that CHM ratified Smith's misconduct, that other CHM employees witnessed and were aware of the misconduct, and despite such knowledge CHM failed to repudiate Smith's actions. Plaintiffs have adequately alleged that Smith was acting as CHM's agent during the relevant time period, and therefore CHM is vicariously liable for her actions. For the reasons already stated by the Court for denying Smith's motion to dismiss Plaintiffs' state law claims for malicious prosecution, abuse of process and violations of § 301 of the Texas Occupations Act, *see supra* sec. IV, the Court also denies CHM's motion to dismiss these same claims.

## VI.   Conclusion

Based on the foregoing, the Court **grants in part** and **denies in part** Allison R. Smith's Motion to Dismiss Pursuant to Rule 12(b)(6). In particular, the Court **grants** Smith's motion to dismiss Plaintiffs' § 1983 claim for violation of the Fourteenth Amendment, but **denies** the motion in all other part. The Court **denies** Correctional Healthcare Management, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6). Further, the Court **grants** Defendant Wichita County's Motion to Dismiss, and **grants** the Rule 12(b)(6) Motion to Dismiss of Duke, Callahan, Meador, Johns and Whipple.

Plaintiffs' § 1983 claims against Wichita County and Defendants Duke, Callahan, Meador, Johns and Whipple, in their official capacity, are hereby **dismissed with prejudice** for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiffs' § 1983 claims against Officer Defendants Duke, Callahan, Meador, Johns and Whipple, in their individual capacities, are hereby **dismissed** based on the Officer Defendants' entitlement to qualified immunity. Further, although in the live

pleadings Plaintiffs appear to have abandoned earlier claims for violations of 42 U.S.C. § 1985, to the extent Plaintiffs still seek to assert § 1985 claims, the Court **dismisses** these claims **with prejudice** for failure to state a claim.  Plaintiffs' state law claims against Defendant Wichita County and Defendants Duke, Callahan, Meador, Johns and Whipple, as Wichita County employees, are hereby **dismissed** under the Texas Tort Claims Act.  The County Defendants and Officer Defendants are hereby dismissed as parties, as no claims remain against them.

Remaining in this case are: Plaintiffs' state law claims and § 1983 claims for First Amendment violations against Defendant Smith: and Plaintiffs' state law claims and § 1983 claims for First and Fourteenth Amendment violations against Defendant CHM.[10]  An order requiring a scheduling conference and report for contents of scheduling order under Fed. R. Civ. P. 16(b) and 26 will issue separately.

SO ORDERED this **31st** day of **December, 2013.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[10]In its motion to dismiss and brief in support, CHM advanced no argument in support of dismissing Plaintiffs § 1983 claims.

39